The Court now calls Case 118-667, People of the State of Illinois v. Jeremy Thompson. Are you ready to proceed? Ready? May it please the Court. Counsel. Assistant Attorney General John Schlafenbach on behalf of the people of the State of Illinois. Your Honors, this Court should reverse the Appellate Court's decision and reinstate the judgment of the Trial Court for two reasons. First, the Trial Court's admission of lay opinion testimony about the contents of surveillance footage was entirely appropriate under Illinois Rule of Evidence 701. And second, even if there were some error in the admission of that testimony, given the substantial evidence against it, apart from the challenged evidence, any such error would be harmless. Turning first to the Rule 701 issue, the language of Rule 701 is clear and the parties agree that there are just two prerequisites to the admission of lay opinion testimony, and those are that it be first, rationally based on the perception of the witness, and second, that it be helpful to a clear understanding of the witness's testimony or the determination of a fact that issue. And in this case, there is really no dispute as to the first of those. It is the helpfulness issue that has become the core of the dispute. Now, this Court has not ruled on Illinois Rule of Evidence 701, so guidance from this Court would be very helpful for that reason. But other Illinois Courts have ruled on it, and fortunately, Illinois Rule of Evidence 701, which was adopted in 2011, is identical to the Federal Rule of Evidence 701. And this Court has ruled in a similar circumstance dealing with the Class Certification Rule, that where the Illinois Rule and the Federal Rule are the same, it is helpful to look at those federal authorities. So we have a wealth of authority from around the nation and from other states that also have an identical version of Rule 701. And those cases, when they're looking at helpfulness and talking about the type of lay opinion here, which is to say, opinion identifying someone in surveillance footage, they say that the single most important factor in determining helpfulness is, was the witness familiar with the defendant? Did the witness have a prior familiarity? And this is not an exacting standard. You can see this from cases like United States v. Jackson from the Seventh Circuit in 1982, where a single contact prior to trial between the witness and the defendant was sufficient to establish the requisite familiarity, requisite helpfulness, and to allow the admission of the testimony. Indeed, in other cases, there has been no prior in-person contact between the witness and the defendant. The familiarity in those cases is based on the review of audio or videotapes, such as this surveillance we have in this case. The familiarity can be developed in any number of ways, and it need only be slight. The standard is, is it more familiarity than the jurors have? This might seem like a low standard. The reason for that is simple. That's the same as in most areas of evidence. We've moved away from a system where we try to keep all evidence from the jury because we're afraid they might misinterpret it, but we allow relevant evidence in subject to vigorous cross-examination, the adversarial process, which can bring out potential issues with that jury, with that evidence. The jury is given the chance to assess the evidence, give it the appropriate weight. And courts have ruled that evidence about the extent of a witness's familiarity with the defendant, about the extent of contacts between that witness and the defendant prior to trial, that goes to the weight to be given to the evidence, not its admissibility. We don't bar the jurors from hearing the potentially relevant evidence. This is similar to what we do, for instance, with witness bias. A witness might have some suggestion of bias, but we don't say we're not going to let you take the stand. Instead, we say we're going to rely on cross-examination to bring out any potential issues of bias and let the jury decide what weight this testimony should be given. It's a very similar principle. This is the modern trend in the admission of evidence, and it's been recognized nationwide. So that's why the standard is what it is. And again, a very small amount of prior familiarity is enough to allow the admission of this testimony. Now, in this case, I'm sure you will hear, the defendant actually didn't cross-examine about these issues. The defendant did not ask, how many times did you see the defendant before? How long did those contacts last? Or, for instance, what did you notice during those contacts that you later relied upon in making your identification? Those questions weren't asked. Of course, that is an issue that defendants don't make it. We rely on the adversarial process to bring out these issues. The trial court and the state can't be faulted for not raising issues that are harmful to them, potentially. In fact, the defendant didn't even object before the trial court on the basis that the witnesses lacked sufficient familiarity with the defendant or that they wouldn't be helpful to the jury. The defendant, in fact, did not even cite Rule of Evidence 701 in his written motion or in his oral argument before the court. And I'd refer you to C30 and C324 to 27 in the record for that. The issue before the trial court was whether this evidence went to the ultimate issue in the case. That, of course, is a term of art. It refers to the guilt or innocence, ultimately, of the defendant. This was not that issue. It was whether he was on the surveillance. So the trial court rejected that argument. But regardless, the issue of whether there was enough evidence of familiarity, whether these witnesses had defects in their familiarity, that wasn't argued before the trial court. So to the extent that there is not more evidence of familiarity in the record, again, that is something that should be held against the defendant. Defendant, as the proponent of this argument, had the responsibility to create the record for it. And I'd refer you to People v. Givens from this court in 2010 or People v. Basler from 2000. So the proffering party doesn't have an affirmative obligation to present evidence of familiarity? No. In the absence of some objection, like with much evidence, the evidence comes in unless there is an objection and there is discussion on the issue. Of course, there can be a proffer in that situation or a hearing. But that wasn't the issue that was presented, so there was no opportunity to raise that issue. But I want to be careful to point out that there was evidence of these witnesses' familiarity that was in the record. Although it wasn't the focus of what happened at the trial court, there was evidence of this. In addition to the fact that each of these witnesses viewed the surveillance footage prior to trial or viewed at least a still image taken from that footage, the witnesses had prior in-person contact with the defendant as well. Chief Deputy Sandusky conducted an in-person interview with the defendant, which would have given him the opportunity to assess his physical features, his mannerisms, his way of carrying himself. Jessica Jocelyn had a mutual friend with the defendant and had observed him in person on a prior occasion. Officer Huff had prior professional dealings with the defendant and immediately recognized him when he saw the still photo. And Officer Jackson made it similarly felt that the photo immediately resembled the defendant when he saw it. So each of these witnesses did have familiarity sufficient to allow the admission of their testimony. It was helpful to the jury. It was admissible under Illinois Rule of Evidence 701. And then here the state argued in closing argument, in a very strong argument, that the jury had heard from police officers that this is the person. They identified this person. Now clearly the state was using that evidence to bolster their case, this identification issue that was at issue. So basically what you're saying is if the police officers who arrested the defendant and interviewed him now have had contact with him, then they will always be able to then come into court and identify those people in a crystal clear video because they have had an opportunity to arrest or interview the defendant. Is that really what you're saying? I think that under Rule of Evidence 701, that testimony would be admissible. Now it could also be excluded. That's within the judge's discretion. It would not be an abusive discretion to decide that such evidence was cumulative or to find from sui sponte, that there wasn't enough familiarity or that the evidence simply didn't meet some threshold of relevance. But it's not an abusive discretion alternately to decide that it is. I know there's been some dispute about the standard of review in this case. I would point out that all of the federal circuits applying Rule 701 apply the abusive discretion standard, and really that makes sense given that there are factual determinations involved in that decision. But indeed that's what the defendant is arguing here in part is that we needed more facts about who knew the defendant when and under what circumstances. So clearly there's facts to be heard and weighed in making this analysis that standard is appropriate. I've not seen the video. Yes. Hopefully we'll all have a chance to do that before this case is resolved. Is there any question about the fact that it's crystal clear? I would not use the term crystal clear. I would not. I think that you can, in my mind, I hesitate to give my own opinion. The issue is helpful. Is it helpful to the jury? Why do the jurors need help in this case to look at the same video and look at the defendant sitting in front of them and make their own determination as to whether that's the person in the video? Why do they need help? Well, respectfully, Your Honor, the standard isn't whether they need help. It's whether it would be helpful. It doesn't need to be essential. It just needs to be something that is helpful. And it is helpful. No matter how strong your own opinion of an issue is, it's always helpful to hear someone else's opinion. Or I hope so. Otherwise, I'm in the wrong place. I think that it's important to allow the jury the chance to view the video on its own, which it did in this case, and the record reflects that the jury had its own opinion. But it can still be helpful to hear what other individuals who have this prior familiarity think about the video. Certainly not dispositive. The jury was told that. Again, the jury was given the opportunity to hear that testimony and give it appropriate weight. The jury could have said, we don't care about that testimony at all. We think it's entitled to no weight because we don't think those people knew him very well. We think we can look at this just as well as they can. Indeed, that's what they were told during the closing arguments. So the jury had the opportunity to do that. And that is one of the reasons that if there is error in this case, it's harmless because the error could not possibly have impacted the verdict in this case. The alleged error is that there was opinion given about who was depicted in the surveillance footage. But that footage was before the jury. The jury was told to view it and make its own decision. The jury did view it and asked for it again during deliberations so that they could make their own determination. And courts from around the nation have recognized that where the jury does have that ability on its own, has the opportunity to make its own assessment of this failure footage, the admission of any opinion about that testimony is really harmless. And so that's one reason it's harmless. Also, because the defendant himself conceded that he was the person depicted in the surveillance footage. In his statement to the police, the defendant admitted that he looked at the still photo taken from the surveillance and he said, I wish I could say that wasn't me, but it is. He then said the photo was pretty cool, asked if he could have a copy, and if it would be in the newspaper. So he very thoroughly admitted the issue as to which this alleged error considered. In light of his own unequivocal opinion that he was the person depicted in the footage, the admission of other opinions on that topic clearly could not have impacted the verdict. Another way that this court has looked at harmless error in the past is to talk about the evidences to which there is no dispute, the properly admitted evidence, and see if that overwhelmingly supports the conviction. That's certainly the case here. In addition to his statement that he was the person in the surveillance, the defendant also admitted that he had attempted to steal anhydrous ammonia from this location on this date, described in detail how he attempted to do so, that he had a bottle and a hose in a bucket, the hose was too small so he almost got gassed out, overcome by the fumes and had to give up. He described how he had in fact done the same thing on several prior occasions and obtained a couple gallons of anhydrous ammonia that he had sold for cigarette money or used to make methamphetamine. These very specific, detailed admissions against interest are highly credible and are great evidence to render any other error harmless. This court has recognized the power of a confession and rendering error harmless, even where, as here, defendant later thought better of the confession and recanted and tried to present an alibi defense. As to that recantation and that alibi defense, they're both very weak. The recantation itself contained a demonstrable falsehood. Defendant at the end of his interview said, oh wait, that couldn't have been me in that surveillance because I was in custody in another county on that date. Well, when they followed up with that county, he was not in custody on that date. He'd been released some three days prior to the crime. So then at trial, defendant altered his account and said, oh, well, I was performing home repairs for someone at the time of the crime. Presented two alibi witnesses. Neither actually provided an alibi. One of them said, well, I was with him, but I can't be sure about the date exactly. I just don't know. It was near my daughter's birthday, but I can't say the exact date, which is important when you're trying to establish an alibi. The other one said, oh, I was with him on that date, but I was asleep at the time of the crime. I was asleep all night. I didn't wake up. I was asleep until after the crime had been committed. So again, not an alibi. These witnesses also had severe credibility defects. One of them was highly uncertain in her testimony. The other had a prior conviction and also was defendant's girlfriend, both at the time of the trial and the time of the crime. And moreover, as I've mentioned, the alibi defense was impeached by his own earlier statement, where he gave two differing accounts of his whereabouts at the time of the crime. So in light of all of this, any error in the admission of this testimony under Rule 701 was clearly harmless, but we believe that there was no error, that this evidence was appropriately admitted under Rule 701. There was no abuse of discretion, and for those reasons, we would ask that this court reverse the appellate court's decision and reinstate the trial court's judgment. Unless there are further questions, I'll thank you for your time. Thank you. May it please the court. My name is Lawrence O'Neill, and I represent Jeremy Thompson in this state appeal. I ask this court to affirm the judgment of the appellate court granting Mr. Thompson a new trial. I agree with counsel that the underlying question here is whether the lay opinion testimony was helpful to the jury under Rule 701. However, federal courts and the Thompson court and People v. Mr. and People v. Starks place a standard on under what circumstances is a witness's testimony helpful to the jury. And the standard these courts have developed is whether the lay witness's testimony would be more likely to correctly identify the defendant on the surveillance footage than the defendant on the surveillance footage than the jury. If the witnesses are not better able to correctly identify the defendant, then it does not meet the helpful to the jury standard under Rule 701 and is not admissible. Is there anything, Mr. O'Neill, in 701 that would indicate, and I believe the two situations that were given by the appellate court here that kind of enhances what you were saying, are the two situations that they brought up after looking at Starks is when the defendant's appearance is changed between the time of the recording and where the video is unclear or a limited depiction that we've heard before. Is there anything in the language of 701 which would limit it to those two situations? I'd say no, Your Honor. And my position is the Thompson Court did not hold that either one of those two conditions must be present for lay opinion testimony to be admissible. The standard is helpful to the jury in itself. But what this court... But the appellate court here did, didn't they? Your Honor, my opinion is that the appellate court relied on Starks for examples of how other courts have determined whether a lay witness testimony is helpful to the jury. And the Thompson Court noted in Starks that those two conditions that you mentioned, the defendant's appearance had changed or the surveillance lacked clarity. But the Thompson Court went on to hold, we looked through the entire record and find no reason, there is no reason why any of these witnesses are better able than the jury to correctly identify Mr. Thompson on the record. Therefore, it does not meet the helpful to the jury requirement under Rule 701. So the Thompson Court did not hold that either one of those two conditions must be present, but there must be some basis in the record to establish. So you're separating yourself a little bit from the rationale employed by the appellate court here? No, Your Honor, I'm just saying that the appellate court did not hold that either one of those conditions are required. There's other language in it that definitely the appellate court looked to Starks and said those two conditions generally have been reasons to allow this testimony. But then the appellate court looked through the entire record and said there is no basis, there is no demonstration in the record why any of these witnesses are more likely to correctly identify. So from that standpoint, I disagree with the counsel that the Thompson Court held that those two conditions are required. And that is that there's language in the Thompson case that supports that where the court looked throughout the entire record. So it is your position that it is the proffering party's duty to proffer evidence of helpfulness? That's correct, Your Honor. And in this case, counsel filed a motion in Lemonade to bar the witnesses from giving opinion testimony about the identity of the person depicted in the surveillance footage. Then the state is the offering party. The state was the party seeking to present this lay opinion testimony. And it was their burden to demonstrate a reason why this testimony was helpful to the jury, why this testimony, why these witnesses were more likely to correctly identify Mr. Thompson than the jury was. Again, it was the state's burden to establish that at that motion in Lemonade hearing. So the question really comes down to, whether the standard for helplessness to the jury allows lay opinion testimony. What standard is used? Helpful is kind of an ambiguous term. The state argues that because the witnesses were more familiar with Mr. Thompson than the jury, they were helpful to the jury.  such a position would do away with the evidence of helpfulness. The record has to establish why and how those witnesses' familiarity with the defendant would make them more likely to correctly identify the defendant. In other words, mere familiarity in itself does not meet the requirement of helpfulness to the jury. It is improper under the federal case law,  it is improper under the federal case law, it is improper to allow lay witness identification testimony of a person depicted in surveillance footage when the evidence tends only to establish a fact that the jury could decide for themselves, thinking for themselves, and drawing their own conclusions. If a jury is capable of deciding the issue based on its own inferences and conclusions, the lay opinion witnesses do not meet the helpful to the jury requirement under Rule 701. Again, federal courts have held that lay opinion testimony is admissible based on familiarity with the defendant, only if the record demonstrates that the witness has some special familiarity with the defendant, such as he observed the defendant over a period of time or was aware of some distinctive physical characteristics of the defendant that is revealed on the surveillance video but is not known by the jury. In these circumstances, a witness would be more likely to correctly identify the defendant than the jury and thus meet the helpful to the jury requirement under Rule 701. Now, People v. Starks provides a good example of this special familiarity that allowed the lay opinion witnesses to testify. Starks involved a prison guard identifying a defendant on surveillance video during a prison break. The defendants were depicted in the background in the video and were only discernible by their body movements and their body mannerisms. Because the guards were familiar with the body movements and the body mannerisms of the defendant that the jury was not, also in the context of the video depicting the prison, the guards were familiar with that. They, the prison guards, were in a better position to correctly identify the defendants in the video and thus they met the requirement of helpfulness to the jury under Rule 701. In this case, the record, as the Thompson Court held, the record does not demonstrate any reason why any of these witnesses were, level of familiarity made them more likely to correctly identify Mr. Thompson than the jury. None of the witnesses indicated how long they had known Mr. Thompson, how many times they had observed him, under what circumstances, nor did they explain, mention anything about Mr. Thompson's physical characteristics that formed the basis of their identification. Officer Will Sandusky testified that he only seen Mr. Thompson once in an interrogation. Did not indicate anything about how Mr. Thompson's physical characteristics had formed the basis of his identification. Kevin Jackson stated that he didn't originally, he didn't initially recognize Mr. Thompson in a still photo taken from the surveillance footage, but one week before trial he identified Mr. Thompson on the surveillance video and was able to identify Mr. Thompson at trial as the person depicted on the surveillance video. Jessica Joslyn testified that she seen Mr. Thompson once. She seen him asleep on a couch when she was strung out on methamphetamine. She never talked to him, she never seen him walk around, and that clearly does not establish that her testimony made her better able than the jury to correctly identify Mr. Thompson. And also Officer Brian Huff testified that he was familiar with Mr. Thompson from previous dealings, but he did not explain anything about how many times he had seen Mr. Thompson, under what circumstances, or did he observe any particular characteristics that formed the basis of the identification. So none of these witnesses, the record did not demonstrate that any of these witnesses had a sufficient level of familiarity to make them better able than the jury to correctly identify the defendants. And in this case we have prejudice, but a cumulative effect of these witnesses. Three police officers placing their authority as investigative specialists and authority in the community, identifying Mr. Thompson on the surveillance footage. And interestingly, two of the witnesses only saw Mr. Thompson in the surveillance still photograph, Jessica Joslyn and Brian Huff. Now clearly the jury was in a better position to identify Mr. Thompson than that who have only seen him from a photograph. Actually, the jury was in a superior position to identify Mr. Thompson because they seen the video and they seen him in the courtroom more than these witnesses had seen him. The one time they identified Mr. Thompson in the surveillance still photograph. Council mentioned that the courts that have allowed lay opinion testimony finding that it goes to the weight of the evidence and any deficiencies in the witnesses' level of familiarity can be brought out on cross examination. In this case we have a special, police officers create a special problem in this regard. The Thompson court recognized the    presented to the jury in this case. And in this case we have a special will of questioning a police officer regarding his level of familiarity for fear of prejudicing the defendants by insinuations of prior criminal history. Jessica Joslyn, questioning her about her level of familiarity would have insinuated that Mr. Thompson was associated with methamphetamine makers because that's where she was strung out on metham and the inhibition. The implication was the insinuation that Mr. Thompson was associated with this group of methamphetamine users. These four witnesses were not presented to help the jury identify Mr. Thompson. They were presented to pile on multiple identifications to reinforce the state's argument that Mr. Thompson was the person depicted in the surveillance footage. None of the witnesses were more likely to correctly identify Mr. Thompson, and yet the state piled on four witnesses, and the cumulative effect of such testimony was overwhelming. Regarding the level of familiarity, the record does not demonstrate that Mr. Thompson was associated with methamphetamine makers. In my brief, I cited a People v. Sykes that held that whether a witness properly is allowed to identify a defendant in a surveillance video, under Rule 701, does not involve a question of law, and that does not involve an exercise of discretion, and therefore, the standard of review is de novo. I acknowledge that this case was cited by the state that a judge's discretion regarding the admission of evidence is generally reviewed for an abuse of discretion, but under any standard of review in this case, the evidence does not demonstrate that the four witnesses' level of familiarity was sufficient to make them more likely to correctly identify Mr. Thompson than the jury. So your argument would be the same if it was one witness? I mean, you wouldn't make the cumulative argument, I guess, of piling on with the four, but your argument would be even if there was one witness called out of those four, that witness had no more familiarity and shouldn't have been allowed to testify? Well, Your Honor, it depends on whether the offering party can establish a sufficient level of familiarity with the defendant that makes that witness more likely to correctly identify them. And in this case, none of the witnesses? That's the problem. I mean, there's no foundation established that these witnesses' level of familiarity made them more likely to correctly identify. I mean, there are circumstances where a witness' testimony, lay opinion testimony regarding identification would be helpful to the jury. The big problem here is that the record does not establish that. So if we agree with you on foundation, then we're into the whole harmless error. Well, the harmless error, yes, but I submit, Your Honor, the cumulative effect of four witnesses and three police officers identifying Mr. Thompson on the surveillance footage, in addition to disparaging Mr. Thompson's character with insinuations of prior criminal history and drug abuse, was so prejudicial that it made the other evidence inconsequential. And I think that's   the problem. The jury would have had to decide contrary to three police officers, with their authority and status, that three police officers testifying that that's him. The jury would have had to disregard that. So the cumulative effect of these witnesses, in addition to the disparagement of Mr. Thompson's character with insinuations of prior   criminal history and drug abuse, so tainted the jury that the error cannot be deemed harmless. What about his own statement saying that's me in the video? What do we do with that? Well, Your Honor, he did recant at the end of that statement and deny that he was the person on the surveillance footage, which then the jury was presented with two conflicting statements by Mr. Thompson. One, that was me. The other, no, that wasn't me. I didn't do it. Well, this creates a question of credibility, Mr. Thompson's credibility, that the jury had to weigh. But credibility alone does not establish overwhelming evidence under the harmless error doctrine. And in addition to the lack of physical evidence, fingerprint evidence, any other witness identifying Mr. Thompson as being, connecting him to the anhydrous plant, any other witness identifying Mr. Thompson as being, connecting him to the anhydrous plant, Mr. Thompson presented an alibi. So when you consider all that lack of evidence and Mr. Thompson's recantation of his admissions, which only created a question of credibility, the error cannot be deemed harmless beyond a reasonable doubt. Are you asking us not even to look at the other side of the evidence to find whether it's closely balanced? I mean, you keep saying that the cumulative ID evidence was so prejudicial, it could never be deemed harmless. I think that you're taking out of the equation looking at the other evidence on the other side. I know you just commented to Justice Tice about the recantation. But are we to even look at whether it's a weak recantation, whether the alibi evidence is weak? Do we look at that? Or are you saying it is so unconscionable to have these four ID witnesses that it doesn't matter what the evidence is on the state side? Well, my first response would be, Your Honor, that yes, the cumulative effect of this evidence so tainted the jury that it made the other evidence inconsequential. So yes, the first answer would be yes, the cumulative effect of this in itself, with police officers, four witnesses piling on identification testimony, yes, that is in itself   inconsequential. I think that Mr. Thompson is denied a fair trial in this case. However, I recognize that under the harmless error doctrine, that this Court will have to address that question. But in that regard, the burden is on the state to prove beyond a reasonable doubt that the error was harmless. And under any approach to measure error under the harmless error doctrine, can this error be deemed harmless beyond a reasonable doubt? Courts look to three factors in determining whether the error was harmless. First, whether the error was, whether the improperly admitted evidence was cumulative or duplicative of other properly admitted evidence. And here the evidence in question was the lay opinion identification testimony of four witnesses. There is no other evidence that identified Mr. Thompson or placed Mr. Thompson at the scene. The second question is whether the evidence might have contributed to the conviction. For the evidence, two facts make lay opinion testimony extremely prejudicial and improper. One, when it concerns the ultimate fact, an ultimate fact for the jury. And secondly, when it comes from police officers. And both of those facts are present here. As to the ultimate issue, the state case regarding identification was based upon the surveillance footage. In closing argument, the prosecutor told the  jury that several police officers identified Mr. Thompson on the surveillance footage that had prior dealings with him. Now, that not only prejudiced Mr. Thompson by the three police officers identifying, but suggesting, but not suggesting, but stating that they had prior previous dealings with him. Mr. Thompson's defense was the state failed to prove beyond a reasonable doubt that he was the person depicted on the surveillance footage. The defense counsel told the jury in closing argument, the ultimate issue in this case is who was on the video. Your time has expired. I'm sorry, Your Honors. Thank you very much. Just a couple of quick points in rebuttal, Your Honors. Defendant is attempting to graft additional requirements onto the clear language of Illinois Rule of Evidence 701. As Your Honor noted, Rule 701 does not have a clear language. It does not have a clear definition of the defendant's appearance. It does not contain a requirement that there be unclear surveillance or that there be a change in the defendant's appearance for that opinion to be helpful. That's nowhere in the text of the rule. All the rule requires is helpfulness. And courts nationwide have recognized that although those things could establish the helpfulness, they're not the only things that establish the  helpfulness. Defendant is also trying to shift the burden on these issues. Defendant didn't object on a Rule 701 basis, but he argues that the state somehow still should have presented additional evidence on how familiar these witnesses were about their contacts with the defendant on an issue that was undisputed. Should they also have presented evidence that this wasn't hearsay? The party has to make an objection before the proper of the evidence is required. The objection made was that this went to the ultimate issue in the case. Based on that objection, there was no reason to bring forward additional evidence about these witnesses' familiarity. And defendant had the burden of asking about those issues on cross if indeed he believed those issues to be important. So it's just that I really understand. We're talking about the word helpfulness. Yes. And your position is helpfulness is synonymous with familiarity. Your opponent's suggestion is that helpfulness means that these witnesses are in a better position to make the identification than the jury. Yes. And you reject that. No. These witnesses are in a better position to identify him than the jury because they have that prior familiarity. Having seen him before, they are better able to reach back into their memory banks and say, that's the guy. It's like when a witness is making an in-person identification on the stand. That witness has seen the defendant before, is better able to make that identification because of the prior experience. Is it true that two of these police officers had seen a photo? It's true. Well, so everyone saw the photo. We're talking about the two police officers. Is it true that two of them, their enhanced familiarity was that they had seen a photo? It's actually not correct as to Officer Huff that he had not seen the video. If you look at C458-60 and 462 in the record, he viewed both and made identifications. So he had seen the video, he had seen a picture, and that's the enhanced familiarity he had. Well, he also had prior dealings with the defendant. He testified to that. What about the other officer? The other officer had viewed the photo. I believe he is the one who viewed the video, but only a week before trial. So his viewing of the video was later. It was not drawn out by either side in his testimony the extent of his prior contacts with the defendant. He did testify, however, that when he saw the photo, he immediately thought it resembled the defendant, the implication being that there was a basis for him to believe that it resembled the defendant. But the only evidence is he saw the video, he saw the picture, and therefore his familiarity was in a better position to make a identification. Yes, and that is consistent with those cases like United States v. XL, United States v. Jackson, that rely on a very limited contact, even just the viewing of video or listening to audio ahead of trial. This is entirely consistent with this rule that we allow the evidence in, and then we also allow cross-examination. Defendant easily could have asked questions to say, oh, but you only viewed the video. You haven't ever met him in person, if in fact that were the case. A defendant argues that he couldn't possibly have cross-examined about these contacts because it would invariably reveal his criminal record. That's not the case. Defendant easily could have asked, how many times did you have prior contacts with the defendant? How close were you standing to him during those contacts? When did these contacts take place? How long ago? All of these things without touching on the fact that some of those contacts may have been in the context of a criminal record. Does the police officer alone give the inference that there was some criminal background or some other background itself without even having to ask that question? It does not, Your Honor. And this court has previously recognized this. I don't have the citation with me. It is in our brief. The mere fact that a police officer is acquainted with an individual doesn't imply criminal conduct. Police officers are members of the community, like all of us, especially in a small community like this where we're working on a toy drive together. There's no implication that anyone a police officer knows he knows because that person's a criminal. There's authority in our brief for that point from this court. Defendant also argues that there is a special familiarity required, that it's something more than just familiarity. That is not what the rule says. If the rule makers had wanted to say there must be a special familiarity, they could have said that. They use the word helpful. Right. Right. Well, yes, but they don't say he must be especially helpful. And it doesn't say familiarity at all. You're right. It just says helpful. So if the witness is helpful, that's the end of the story. It doesn't have to be based on a special familiarity. If you look at the case law, that's what you see, that there can be a very limited familiarity that is still helpful. And really, this comes down to the weight of authority, sorry, to the weight versus admissibility issue, that this evidence can come in subject to effective cross-examination. It's no different than any number of other areas of evidentiary law where we allow the evidence in and we allow cross-examination so the jury knows what weight to give it. And the standard of review also definitely plays in here because it is abusive discretion. It might not have been an abusive discretion for the court to decide I'm not letting this in, but it wasn't an abusive discretion for the trial court to allow it in. Trial courts have a hard time to address these issues. And especially with the familiarity issue not before him, with the issue of the witness's prior contacts and their helpfulness not having been raised before the trial court, the trial court had no reason to conduct a further inquiry into that. So his decision to allow this evidence was far from an abusive discretion. It was the only thing he could do in light of the arguments that were presented to him. And so, again, we would ask that this court reinstate that trial court's judgment which was made in its sound discretion and reverse the appellate court in this case. Thank you. Case number 118667, People of the State of Illinois v. Jeremy R. Thompson will be taken under advisement as agenda number 11. Mr. Schleppenbach and Mr. O'Neill, thank you very much for your arguments this morning. You're excused at this time.